IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ERIC WIECZOREK                :
                                             :      CIVIL ACTION
     v.                         :      No. 12-4170
                                             :
DEMPSEY PARTNERS, LLC., et al.    :

O'NEILL, J.                                                                  December 16, 2013

## MEMORANDUM

Before me is a motion for summary judgment by defendants Dempsey Partners, LLC, John Dempsey and Jill Dalton on the claims made by plaintiff Eric Wieczorek in his second amended complaint, plaintiff's response, and defendants' reply. Plaintiff brings a breach of contract and a Pennsylvania Wage Payment and Collection Law claim for defendants' alleged conduct in terminating his employment for cause without basis and for failing to pay severance due to him under his employment agreement. For the reasons that follow, I will deny defendants' motion.

## BACKGROUND

Plaintiff was hired as Manager of Supply Chain Analytics by Dempsey Partners' predecessor entity Dempsey, Myers & Company, LLP on or about March 23, 2007. Dkt. No. 17-1 at ECF pp. 27-28 (Ex. D). His 2007 employment offer letter identified a base salary of $150,000 per year and included the following provision:

> This agreement is not an employment contract and does not provide for a guaranteed term of employment or guaranteed compensation. However it is the intention of the parties to work together for a minimum of three years. In the event of involuntary separation from the company, for any reason other than cause, you will be entitled to severance payments not to exceed six months base salary, payable with normal biweekly. You agree to make every reasonable effort to seek alternative employment during the severance period, and that severance payment will cease upon finding suitable new employment.

Id.

In or after March 2009, a new Dempsey partnership was formed and the partners agreed to an operating agreement executed in March 2009 that contained restrictive covenants. Id. at ECF pp. 15:13-22. The partners determined that a condition of employment for all Dempsey employees was the signing of an agreement with the same restrictive covenants. Id. All employees including plaintiff signed the backdated agreement of January 1, 2009 effective as of the same date.[1] Id. at ECF p. 16:20-21. The 2009 Agreement addressed only restrictive covenants regarding confidentiality, the disclosure and assignment of inventions, improvements, non-disparagement and non-solicitation of customers and employees. Dkt. No. 17-1 at ECF pp. 22-25 (Ex. C). It contained this merger clause:

> ENTIRE AGREEMENT. This Agreement constitutes the entire understanding among the parties and supersedes all prior agreements among them. No modification, discharge or waiver, in whole or in part, of any of the provisions of this Agreement shall be valued unless in writing and signed by the parties.

Id. ¶ 3. The 2009 Agreement also provided that it was to be governed by and construed in accordance with the laws of the State of Connecticut. Id. ¶ 5. Around the same time, between the end of 2008 and beginning of 2009, plaintiff entered into a verbal agreement with John Dempsey, managing partner of Dempsey Partners, to have his salary raised to $175,000 per year. Dkt. No. 17-1 at ECF pp. 6:21-7:12. In 2010, he also separately negotiated agreements for extra vacation time with Dempsey and Jill Dalton, a partner at Dempsey's New York office. Id. at ECF p. 6:9-20.

Dempsey testified that he first started to consider firing plaintiff in late 2011 after

---

[1] Dempsey testified that he is "not sure" whether clerical staff signed the Agreement, but certainly "anyone having a client involvement" did. Dkt. No. 17-1 at ECF pp. 16:20-17:2.

plaintiff's alleged erratic behavior at an industry conference.  Id. at 18:6-24.  Dalton testified that she and Dempsey discussed terminating plaintiff because plaintiff did not "follow through" on the instructions they gave him following the conference.  Id. at ECF p. 36:11-19.  Plaintiff was terminated for cause by Dempsey Partners on or about August 29, 2010.  Dkt. No. 20 at ¶ 15.

Plaintiff alleges that defendants falsely terminated him for cause in order to avoid the severance due to him under the 2007 Offer Letter and claims a breach of contract and damages of $87,000 which is the severance amount of six months of his base salary at the time of termination.  Dkt. No. 20 at ¶¶ 18-23.  Plaintiff also claims liquidated damages of 25 percent of his total unpaid severance, attorney's fees and costs pursuant to the Pennsylvania Wage Payment and Collection Law, 43 Pa. C.S. §§ 260.1, et seq. Id. at ¶¶ 24-29.  Finally, plaintiff claims that Dempsey and Dalton are individually liable under the WPCL because each was a managing partner of the company and each participated in falsely alleging cause for his termination.  Id. at ¶ 28.  Defendants argue that the operative agreement between the parties does not provide the relief plaintiff seeks and move for summary judgment on all of plaintiff's claims.[2]  Dkt. No. 16 at ECF p. 3.

### STANDARD OF REVIEW

Summary judgment will be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The party moving for summary judgment bears the burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R.

---

[2] Defendants do not seek summary judgment on the issue of whether Dempsey Partners had cause to terminate plaintiff because they argue the 2007 Offer Letter "was superseded by his 2009 Employment Agreement and otherwise had expired by its own terms before plaintiff's termination."  Dkt. No. 16 at ECF p. 4 n.1.

Civ. P. 56(a); see Celotex, 477 U.S. at 322-23.  If the movant sustains its burden, the nonmovant must set forth facts demonstrating the existence of a genuine dispute.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.  A fact is material if it might affect the outcome of the case under governing law.  Id.

> To establish that a fact cannot be or is genuinely disputed, a party must:
>
> > (A) cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The adverse party must raise more than a mere scintilla of evidence in its favor in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, or mere suspicions.  Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989).  The existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the movant.  Ely v. Hall's Motor Transit Co., 590 F.2d 62, 66 (3d Cir. 1978) (citations and quotation marks omitted).

## DISCUSSION

Defendants argue that plaintiff's claim for breach of a contractual obligation to provide him with six months of severance pay under the terms of their 2007 Offer Letter agreement fails because the 2007 Offer Letter was superseded by the express terms of the 2009 Agreement which contains no severance provision.  Dkt. No. 16 at ECF pp. 11-13.  Defendants further argue

that the 2007 Offer Letter had expired by its own terms three years after plaintiff's hiring and prior to his termination.  Id. at ECF pp. 13-16.

Plaintiff argues that the 2009 Agreement did not supersede his 2007 Offer Letter because it is "so distinct" in subject matter that the parties would not have understood the severance provision in the 2007 Offer Letter to have been extinguished by the 2009 Agreement.  Dkt. No. 17 at ECF pp. 16-19.  Plaintiff also argues that the 2009 Agreement lacked consideration and is therefore invalid.  Id. at ECF pp. 11-16.  At issue is whether the parties' 2007 Offer Letter agreement and the severance provision contained therein has been superseded or is expired.  I find that it is neither.

### I.  Count I:  Breach of Contract

In order to prove a breach of contract under Connecticut law, a plaintiff needs to establish:  (1) the formation of an agreement; (2) performance by one party; (3) breach of the agreement by the other party, and; (4) damages.  FCM Grp., Inc. v. Miller, 17 A.3d 40, 54 (Conn. 2011), citing Am. Exp. Centurion Bank v. Head, 971 A.2d 90 (Conn. App. Ct. 2009). Plaintiff argues that defendants breached the severance term of the 2007 Offer Letter agreement which was not superseded by the 2009 Agreement and which also had not expired.

#### A.  Jurisdiction and Choice of Law

Plaintiff is a citizen of the Commonwealth of Pennsylvania residing in Pennsylvania. Dkt. No. 20. at ¶ 3.  Defendant company Dempsey Partners LLC is organized and exists under the laws of the State of Connecticut.  Id. at ¶ 4.  Its individual members are citizens of the States of Connecticut, New York, New Jersey, California, Georgia and Illinois.  Id.  Defendant Dempsey is an individual and citizen of the State of Connecticut residing therein.  Id. at ¶ 5. Defendant Dalton is a citizen of the State of New York residing therein.  Id. at ¶ 6.  Plaintiff

claims damages in the amount of $87,500 in severance payments and an additional amount of $21,875 in liquidated damages under the WPCL. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

The 2009 Agreement between the parties includes a choice of law provision specifying that Connecticut law governs its interpretation. The parties do not dispute the validity of the choice of law clause. See Kruzits v. Okuma Mach. Tool, Inc., 40 F.3d 52, 55 (3d Cir. 1994) ("Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them."). My analysis of the 2009 Agreement is governed by Connecticut state law. [3]

### B.  2009 Agreement Merger Clause

Connecticut law is clear that a merger clause inserted into a written agreement ordinarily provides "conclusive proof of the parties' intent to create a completely integrated contract, and the court is forbidden from considering extrinsic evidence on the matter unless there was unequal bargaining power between the parties." Benvenuti Oil Co., Inc. v. Foss Consultants, Inc., 781 A.2d 435, 439 (Conn. App. Ct. 2001). Under this rule, "the unambiguous terms of a written contract containing a merger clause may not be varied or contradicted by extrinsic evidence." Tallmadge Bros., Inc. v. Iroquois Gas Transmission Sys., L.P., 746 A.2d 1277, 1290-91 (Conn. 2000). However, evidence extrinsic to an integrated contract may be admissible in order to prove a collateral oral agreement which does not vary the terms of the writing.[4] Id. at 1290 n.14,

---

[3] In his response to the motion for summary judgment, plaintiff errs in applying Pennsylvania law to the provisions of the 2009 Agreement as the Agreement is clearly governed by Connecticut law.

[4] Exceptions to the bar against the introduction of extrinsic evidence are:

> (1) to explain an ambiguity appearing in the instrument; (2) to prove a collateral oral agreement which does not vary the terms of

citing TIE Commc'n, Inc. v. Kopp, 589 A.2d 329 (Conn. 1991);  see, e.g. Palozie v. Palozie, 927 A.2d 903, 548 n.8 (Conn. 2007), Perricone v. Perricone, 972 A.2d 666, 673 (Conn. 2009). Connecticut courts recognize that collateral agreements beyond the scope of an integrated contract need not be oral in order to be effective.[5]  Perricone v. Perricone, No. FA030481765S, 2006 WL 852154, at *4 n.3. (Conn. Super. Ct. Mar. 9, 2006), aff'd, 972 A.2d 666 (Conn. 2009). In order to determine whether a matter falls within the collateral agreement exception

> the court must consider 'the inherent probability that parties contracting under such circumstances would or would not make the [integrated] agreement in writing and also the alleged [collateral] agreement.  In deciding upon this intent, the chief and most satisfactory index for the judge is found in the circumstance whether or not the particular element of the alleged extrinsic [agreement] is dealt with at all in the [integrated] writing.  If it is mentioned, covered, or dealt with in [that] writing, then presumably the writing was meant to represent all of the transactions on that element; if it is not, then probably the writing was not intended to embody that element of the negotiation.'

Perricone, 972 A.2d at 673-74, citing Shelton Yacht & Cabana Club, Inc. v. Suto, 188 A.2d 493 (Conn. 1963).

In Perricone, the Connecticut Supreme Court upheld the trial court's finding that the

---

> the writing; (3) to add a missing term in [a] writing which indicates on its face that it does not set forth the complete agreement; or (4) to show mistake or fraud . . . . These recognized exceptions are, of course, only examples of situations where the evidence (1) does not vary or contradict the contract's terms, or (2) may be considered because the contract has been shown not to be integrated; or (3) tends to show that the contract should be defeated or altered on the equitable ground that relief can be had against any deed or contract in writing founded in mistake or fraud.

Tallmadge Bros., 746 A.2d at 1290 n.14.

[5]     Connecticut courts have recognized as authoritative the formulation of the parol evidence rule and its exceptions in the Restatement (Second) of Contracts which does not require collateral agreements beyond the scope of an integrated contract to be oral in order to be effective.  Perricone, 2006 WL 852154, at *4 n.3.

language and inclusion of a merger clause in the parties' later separation agreement did not create a completely integrated agreement extinguishing all prior agreements. Perricone, 972 A.2d at 675. The merger clause of the parties' separation agreement included language that the parties "incorporated" into the agreement "their entire understanding" that "no oral statement or prior written matter extrinsic to th[e] Agreement shall have any force or effect" and that "th[e] Agreement supercedes any and all prior agreements between the [parties]." Perricone, 2006 WL 852154, at *3. However, the trial court found that "[t]he language and subject matter of the two agreements relate[d] to completely separate obligations and interests" where the separation agreement dealt with only custody, alimony, support and other financial matters, while the earlier confidentiality agreement encompassed the parties' intent to prevent disclosure of potentially disparaging information. Id. at *5. The trial court noted that the separation agreement contained no reference to the confidentiality agreement or its subject matter. Id. It concluded that

> the language and subject matter of both agreements and all the evidence offered to it . . . persuades the court that the parties did not intend for their separation agreement to nullify the confidentiality agreement. The substantive terms of the two agreements covered two distinct areas of the parties' rights and interests. Nothing in the separation agreement shows any intent on the part of the parties to address the subjects governed by the confidentiality agreement . . . . The court thus concludes that the separation agreement did not discharge the earlier confidentiality agreement, which was not within the scope of the separation agreement.

Id. at *7. The Supreme Court affirmed the trial court's decision, finding that the relevant subject matter of the two agreements differed and that the scope of restrictions in the earlier agreement was not "mentioned, covered, or dealt with" in the later agreement. Perricone, 972 A.2d at 674.

Similarly, in the instant case, the agreements cover two distinct areas of the parties' rights and interests. The 2007 Offer Letter agreement defined plaintiff's terms of employment

including base salary, bonus, pension, vacation and sick days, holidays, insurance, expenses, work location, profit sharing and/or equity participation, while the subsequent 2009 Agreement addressed only restrictive covenants governing "Confidentiality," "Disclosure and Assignments of Inventions and Improvements," "Non-Solicitation of Customers," "Non-Solicitation of Employees," "Non-Disparagement," and "Equitable Relief and Other Remedies."  Compare Dkt. No. 17-1 at ECF pp. 22-25 (Ex. C), with Dkt. No. 17-1 at pp. 27-29 (Ex. D).  It therefore cannot be said that plaintiff's terms of employment, including severance payments, are dealt with in the 2009 Agreement.  Nothing in the 2009 Agreement demonstrates any intent on the part of the parties to address the matters governed by the 2007 Offer Letter.[6]  The collateral agreement exception to the bar of the introduction of extrinsic evidence applies in the instant case.  Therefore, I find that the 2007 Offer Letter and its term providing for plaintiff's severance pay has not been superseded and may be introduced as evidence of the parties' agreement and defendants' contractual obligations.[7]

### C. Expiration of 2007 Offer Letter Severance Term

Defendants contend that the severance provision in the 2007 Offer Letter[8] on which

---

[6] In fact, as plaintiff testified, he negotiated for a salary raise in a separate agreement at the end of 2008 or the beginning of 2009, presumably around the time when he signed the 2009 Agreement.  Dkt. No. 17-1at ECF pp. 6:21-7:12.  He also separately negotiated for extra vacation time in 2010.  Id. at ECF p. 6:9-20.

[7] Because I find that the parties' 2007 Offer Letter may be introduced as evidence of the parties' agreement, I do not need to consider whether the 2009 Agreement fails for an alleged lack of consideration.

[8] The 2007 Offer Letter agreement does not specify which state law would govern its interpretation.  To answer a choice of law question, federal courts sitting in diversity are required to apply the choice of law rules of the forum state.  Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487 (1941).  "Pennsylvania's choice-of-law analysis consists of two parts.  First, the court must look to see whether a false conflict exists.  Then, if there is no false conflict, the court determines which state has the greater interest in the application of its law."  LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1071 (3d Cir. 1996).  "Under the first step of the analysis, if a Court determines that two jurisdiction's laws are the same, then there is no conflict at all, and a

plaintiff relies expired by its own terms on April 23, 2010, three years after plaintiff was hired and prior to his termination from employment. The 2007 Offer Letter states:

> [t]his agreement is not an employment contract and does not provide for a guaranteed term of employment or guaranteed compensation. However it is the intention of the parties to work together for a minimum of three years. In the event of an involuntary separation from the company, for any reason other than cause, you will be entitled to severance payments . . . .

Dkt. No. 17-1 at ECF p. 28. Defendants argue that the language of this clause in the 2007 Offer Letter demonstrates that "the 2007 Offer Letter provided for severance in the event that plaintiff were to be terminated without cause within his first three years of employment." Dkt. No. 16 at ECF p. 14. I disagree.

> A contract is unambiguous when its language is clear and conveys a definite and precise intent. The court will not torture words to impart ambiguity where ordinary meaning leaves no room for ambiguity. Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous.

United Illuminating Co. v. Wisvest–Conn., LLC, 791 A.2d 546 (Conn. 2002) (internal citations and quotation marks omitted). Pennsylvania law is in accord that where an agreement involves clear and unambiguous terms, the plain meaning of the terms will be enforced. See TruServ Corp v. Morgan's Tool & Supply Co., Inc., 39 A.3d 253, 261 (Pa. 2012) ("[I]t is a well-established principle of contract law that, where the language of a contract is clear and unambiguous, a trial court is required to give effect to that language. Indeed . . . it is the not the function of a court to rewrite agreements between parties, and a court must give effect to the

---

choice of law analysis is unnecessary. Thus, the first part of the choice of law inquiry is best understood as determining if there is an actual or real conflict between the potentially applicable laws." Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230 (3d Cir. 2007) (emphasis in original). In the instant case, there is no conflict between Connecticut and Pennsylvania state law as to the interpretation of clear and unambiguous terms in a contract. A choice of law determination is therefore not required here.

clear terms to which the parties have agreed.") (Internal citations omitted). The parties' agreement clearly and unambiguously indicates that plaintiff is entitled to severance payments if he is separated without cause. The language of the agreement also unambiguously does not subject this severance term to any conditions or limitations.[9] Therefore, I find that the severance term of the 2007 Offer Letter has not expired and is in full effect.

There is a genuine issue of material fact concerning whether plaintiff's termination for cause was without basis and consequently, whether defendant is in breach of the severance term of the parties' 2007 Offer Letter agreement which has not been superseded and which has also not expired. I will therefore deny defendants' motion for summary judgment as to plaintiff's Count I claim for breach of contract.

## II.     Count II:  Pennsylvania Wage Payment and Collection Law

Plaintiff claims under the WPCL the amount of his severance benefits allegedly due him pursuant to the 2007 Offer Letter agreement and also liquidated damages because defendants Dempsey and Dalton allegedly participated in a decision to falsify cause for plaintiff's termination in order to refuse him severance pay. Plaintiff's WPCL claim cannot survive without an independent valid breach of contract claim. See Banks Eng'g Co., Inc. v. Polons, 697 A.2d 1020, 1024 (Pa. Super. Ct. 1997), appeal granted, 706 A.2d 1210 (1998) (noting that the WPCL "does not create an employee's substantive right to compensation; rather, it only establishes an employee's right to enforce payment of wages and compensation to which an employee is otherwise entitled by the terms of an agreement"). Because plaintiff can assert a claim for his contractual right to severance pay, he is permitted to maintain a cause of action

---

[9] I agree with plaintiff that the expression of "a minimum of three years" pertains only to defendants' aspirational length of plaintiff's employment and not the length of the validity of the severance clause in the 2007 Offer Letter agreement.

-11-

under the WPCL.

### A. Liquidated Damages

The WPCL provides for liquidated damages equal to 25 percent of the total wages due when wages remain unpaid for sixty days beyond the filing by an employee of a proper claim or other act making wages payable where no good faith contest of dispute of wage claim exists. 43 P.S. § 260.10. The statute specifically defines separation and any other amount to be paid pursuant to an agreement to the employee as "fringe benefits or wage supplements" included in "wages." 43 P.S. § 260.2a. "Good faith" is found in "any contest or dispute that is based on facts that would lead a reasonable person to find a legitimate dispute as to whether wages were due . . . ." Keegan v. Fahnestock & Co., Inc., No. 95-5998, 1996 WL 530000, at *12 (E.D. Pa. Sept. 16, 1996); see also Braun v. Wal-mart Stores, Inc., 24 A.3d 875 (Pa. Super. Ct. 2011), (discussing Pennsylvania appellate court definitions of "good faith."). "[A]n award of attorneys' fees to a prevailing employee in an action brought under the Wage Payment and Collection Law is mandatory." Oberneder v. Link Comp. Corp., 696 A.2d 148, 151 (Pa. 1997).

Defendants maintain that they "acted at all times in accordance with the clear language of the 2009 Agreement which placed no limitations on Mr. Dempsey's ability to terminate Plaintiff, nor any obligation to provide Plaintiff with severance under any circumstances" and therefore they have a good faith reason to dispute plaintiff's entitlement to severance pay. Dkt. No. 16 at ECF p. 18. An employer bears the burden of establishing good faith in order to avoid the imposition of liquidated damages. See Thomas Jefferson Univ. v. Wapner, 903 A.2d 565, 575 (Pa. Super. Ct. 2006), ("It is both logical and appropriate to allocate to the employer the burden of proving good faith."); Hirsh v. EPL Tech, Inc. 910 A.2d 84, 92 n.9 (Pa. Super. Ct. 2006) (same), Hartman v. Baker, 766 A.2d 347, 354 (Pa. Super. Ct. 2000) (noting that in the context of

insurance caselaw, good faith requires proof by "clear and convincing evidence" pursuant to the WPCL).

In the instant case, defendants have not put forth any evidence of good faith other than a bald assertion that they acted in accordance with the 2009 Agreement which they believe to be the operative agreement between the parties and which does not provide for severance pay to plaintiff. A factual dispute exists over whether defendants have a good-faith defense against the imposition of liquidated damages. Accordingly, I find that summary judgment on this claim is inappropriate.

### B.  Dalton's Individual Liability

Defendants also move for summary judgment on plaintiff's claim against Dalton for individual liability pursuant to the WPCL; they argue that she had no decision-making authority or control over plaintiff's compensation or whether any severance payment would be made to him. Dkt. No. 16 at ECF p. 17. Under the WPCL, an "employer" is defined as including "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. § 260.2a. In order to establish individual liability against an agent or officer, the WPCL requires that the individual exercises a policy-making function in the company or takes an active role in the company's decision-making process. Tyler v. O'Neill, 994 F. Supp. 603, 616 (E.D. Pa. 1998), Mohney v. McClure, 568 A.2d 682 (Pa. Super. Ct. 1990).

In the instant case, the record clearly indicates that Dalton exercised both a policy- and decision-making function at Dempsey Partners, and the latter specifically with regards to plaintiff's termination from employment. Dalton is the Partner-in-Charge of Dempsey Partners'

New York office since 2008.  Dkt. No. 17-1 at ECF p. 32:20-24.  She is responsible for the drafting of Dempsey Partners' employee and policy manuals.  Id. at ECF p. 39:4-6.  She is in charge of the supply chain analytics group of which plaintiff was part and was the supervisor to whom plaintiff reported.  Id. at ECF p. 33:1-15.  She was consulted by Dempsey on the decision to terminate plaintiff's employment.  Id. at ECF p. 13:6-18.  Finally, she concedes to joint decision-making with Dempsey on determining plaintiff's termination to be for cause.  Id. at ECF p. 92:13-16.  I find that Dalton is properly a defendant in this action pursuant to the WPCL and, accordingly, I will deny defendants' motion to the extent that it seeks to dismiss her as an individual defendant.

      I will deny defendants' motion for summary judgment with regards to plaintiff's Count II claims.

      An appropriate Order follows.